United States District Court
Southern District of Texas
**ENTERED**
June 02, 2016
David J. Bradley, Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STANDIFER W. CRAWFORD, | § | |
| DONALD B. WILLIAMS, and | § | |
| ROXANNE MELENDEZ, on behalf of | § | |
| themselves and all others similarly situated, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-14-3665 |
| | § | |
| SAKS & COMPANY, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND OPINION**

This case involves unpaid overtime claims under the Fair Labor Standards Act, 29 U.S.C. §

201, *et seq*. The named plaintiffs, Standifer Crawford, Donald Williams, and Roxanne Melendez are

former sales associates at the Saks department store at the Houston, Texas Galleria. They allege that

Saks regularly required them to work off the clock and that some of these hours exceeded 40 in a

workweek, entitling them to overtime pay for those hours.

These plaintiffs moved for conditional certification of, and issuance of notice to, a nationwide

class of Saks sales associates who were not paid overtime when they worked more than 40 hours in

a workweek, usually off the clock. (Docket Entry No. 29). Saks responded, the plaintiffs replied,

and Saks surreplied. (Docket Entries No. 33, 40, 44). While the motion for conditional certification

was pending, Saks moved for summary judgment, arguing that the retail-sales exemption, 29 U.S.C.

§ 207(i), covers the named plaintiffs. (Docket Entry No. 31). The plaintiffs responded and Saks

replied. (Docket Entries No. 41, 43).

Based on the motions; responses and replies; the record; counsel's argument; and the

applicable law, the court grants Saks's motion for summary judgment as to the three named

plaintiffs; denies the plaintiffs' motion for conditional certification as moot; and enters an order of dismissal.

The reasons for these decisions are explained in detail below.

# I.   Background

## A.   Factual Background

Saks is a national department-store chain that sells luxury clothing and other goods.  The named plaintiffs worked as retail-sales associates at Saks's Houston, Texas Galleria store.  Melendez worked from September 1997 to June 2014 in the men's sportswear department.  (Docket Entry No. 29, Ex. 3 at ¶ 3).  Crawford worked from October 2007 to June 2012 in the handbag department.  (*Id.*, Ex. 1 at ¶ 3).  Williams  worked  from  October  1993  to  May  2013  in  the  men's  furnishings department.  (*Id.*, Ex. 2 at ¶ 3).

Saks sales associates are paid on a nearly 100% commission basis.  (Docket Entry No. 31, Ex. D at 1-2).  For each sale attributed to them, associates receive a fixed percentage of the sale price.  (*Id.* at 1).  The percentage received from each sale varies depending on the department.  (*Id.*).  In each pay period, associates receive a draw in a guaranteed amount.  (*Id.* at 1-2).  The draw amount for each pay period is calculated by multiplying the number of hours the associate worked during that period by a fixed hourly rate.  The rate varies by associate.  (*Id.* at 1-2).  Melendez's fixed hourly rate was $13.00, Crawford's was $10.00, and Williams's was $12.75.  (Docket Entry No. 31, Ex. C at 32:13-14, Ex. A at 60:3-6, Ex. B at 18:6-18).  An associate who works more than 40 hours in a workweek receives one and one-half times the normal hourly rate for the overtime hours worked as part of the draw.  (Docket Entry No. 31, Ex. B at 11:6-9).

Because the draw was against commissions not yet earned, each associate's pay went through a periodic settling process.  (Docket Entry No. 31, Ex. D at 1-2).  That process compared the

associate's total commissions for that period to the draw paid that associate in the period.  If the associate's total commissions exceeded the draw, the associate would be paid the full commission amount.  (*Id.*).  If an associate's total commissions fell below the draw already received, the associate would be placed in arrears for the difference.  (*Id.*).  That associate would need to earn enough in commissions to cover the arrears to receive compensation above the draw.  (*Id.*).  The draw, however, was guaranteed regardless of the commissions earned.  (*Id.*; Docket Entry No. 41, Ex. 4 at 26:3-21).  Associates in arrears would not receive less than their guaranteed draw and did not have to pay back any arrearage if they left the company.  (Docket Entry No. 31, Ex. D at 1-2).

There is no upper limit on the commissions an associate could earn and the rate of commissions does not decrease as total commissions increase.  (*Id.*).  An associate would lose a commission previously earned on a sale that the customer later voided by returning the item, even if the commission had been credited.  (Docket Entry No. 31, Ex. D at 1).

### B.    Procedural Background

Crawford filed this case on December 22, 2014, seeking to represent a nationwide class of Saks sales associates not paid all the overtime they were due during the statutory period.  (Docket Entry No. 1).  Williams and Melendez joined as plaintiffs.  (Docket Entries No. 3, 14).  On November 30, 2015, the plaintiffs filed a motion for conditional certification of, and issuance of notice to, a similarly situated nationwide class.  (Docket Entry No. 29 at 7).  Saks responded to the certification motion and filed a motion for summary judgment as to the three plaintiffs, arguing that the FLSA overtime requirements did not apply because the plaintiffs were subject to the retail-sales exemption.  (Docket Entries No. 33, 31).  The FLSA exempts certain employees from its overtime requirements.  The exempt categories include retail-sales personnel who are paid more than one and one half-times

the minimum wage and receive more than 50% of their earnings through commissions.[1]  *See* 29 U.S.C. § 207(i).  Before filing the summary judgment motion, Saks deposed all three named plaintiffs, the plaintiffs deposed Saks's corporate representative and a supervisor at the Houston Galleria store, and the parties engaged in extensive document discovery.  Saks argues in opposing class certification that it is appropriate to consider the exemption evidence submitted in support of summary judgment.

The court heard oral argument on the plaintiffs' motion for conditional certification and on Saks's motion for summary judgment.  The plaintiffs argued that it was improper to rule on summary judgment before certification and that discovery had not ended.  *See Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012) (courts generally have not examined the merits at the certification stage because "discovery usually has not been conducted at [that] stage").  But extensive merits discovery has taken place, and the plaintiffs could not identify any additional discovery they needed to oppose Saks's motion for summary judgment.  Considering the merits issues raised in the motion for summary judgment is proper, recognizing that the ruling will bind only the named plaintiffs.

## II.    Saks's Motion for Summary Judgment

### A.    The Applicable Legal Standard

"Summary judgment is required when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"  *Trent v. Wade*, 776 F.3d 368, 376 (5th Cir. 2015) (quoting FED. R. CIV. P. 56(a)).  "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving

---

[1]

Saks also argued that the plaintiffs have not shown the amount of overtime owed as a matter of just and reasonable inference.  (Docket Entry No. 31 at 13-14).  Because the court grants summary judgment against the plaintiffs on the exemption, it need not address this second ground.

party.'"  *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)

(quoting *Anderson v. Liberty Lobby*, 477 U.S. 242 (1986)). "The moving party 'bears the initial

responsibility of informing the district court of the basis for its motion, and identifying those

portions of [the record] which it believes demonstrate the absence of a genuine issue of material

fact.'"  *Id.* (quoting *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014)); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Where the non-movant bears the burden of proof at trial, the movant may merely point to

the absence of evidence and thereby shift to the non-movant the burden of demonstrating by

competent summary judgment proof that there is an issue of material fact warranting trial." *Id.*

(quotation marks omitted); *see also Celotex*, 477 U.S. at 325.  Although the party moving for

summary judgment must demonstrate the absence of a genuine dispute of material fact, the movant

does not need to negate the elements of the nonmovant's case.  *Pioneer Expl., L.L.C. v. Steadfast*

*Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014).  "A fact is 'material' if its resolution in favor of one

party might affect the outcome of the lawsuit under governing law."  *Sossamon v. Lone Star State*

*of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet

[its] initial burden, the motion [for summary judgment] must be denied, regardless of the

nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir.

2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

"Once the moving party [meets its initial burden], the non-moving party must 'go beyond

the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and

admissions on file, designate specific facts showing that there is a genuine issue for trial.'"  *Nola*

*Spice*, 783 F.3d at 536 (quoting *EEOC*, 773 F.3d at 694).  The nonmovant must identify specific

evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v.*

*Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence.'"  *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075).  In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party.  *EEOC,* 773 F.3d at 694.

**B.     The Summary Judgment Evidence**

The summary judgment evidence is largely undisputed.  Saks's evidence includes:

- •     the depositions of the three plaintiffs;

- •     Saks's compensation plan; and

- •     the three plaintiffs' time records.

The plaintiffs' evidence includes much of the same evidence Saks relied on, as well as the following:

- •     the depositions of Saks's corporate representative and a supervisor at the Houston Galleria store; and

- •     internal Saks documents outlining the duties of sales associates, including Saks's employee handbook for sales associates.

**C.     Analysis**

Section 207 of the FLSA states that "no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed."  29 U.S.C. § 207(a)(1).  Section 207(i) exempts an employee of a "retail or service establishment," if "the regular rate of pay of such employee is in excess of one and one-half times" the federal minimum wage, and "more than half [the employee's] compensation

6

for a representative period (not less than one month) represents commissions on goods or services."
*Id.*

The parties do not dispute that Saks is a retail establishment or that the named plaintiffs' regular rate of pay was more than one and one-half times the federal minimum wage.[2]   The parties do not dispute the facts of how Saks's compensation plan works, only how it should be characterized and the legal inferences that can be drawn.[3]  The parties do dispute whether more than half of the plaintiffs' compensation came from commissions.

Saks argues that the named plaintiffs were paid on a nearly 100% commission and meet the 50% commission threshold for the retail-sales exemption.  The plaintiffs argue that Saks does not meet the 50% threshold because the compensation plan is not a bona fide commission plan.  Instead, it is a plan to pay a fixed salary—the guaranteed draw—and it occasionally pay commission bonuses.  (Docket Entry No. 41 at 8).

Section 207(i) provides guidance on calculating the 50% threshold.  "In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee."  29 U.S.C. § 207(i).  The statute does not define "bona fide," but the Department of Labor has issued a nonbinding regulation interpreting the term.  29 C.F.R. § 779.416.  Section 779.416 states that a commission plan is not

---

[2]

The plaintiffs argue that Saks has not identified a representative period for determining whether more than 50% of pay constitutes commissions.  But both parties analyze the plaintiffs' pay under on a annual basis.

[3]

At oral argument, the plaintiffs argued that the dispute over whether Saks's compensation plan is a commission plan or a salary plan is factual and not a dispute over legal characterization.  But the plaintiffs' response does not cite to any record evidence raising factual disputes material to deciding whether the plan is a bona fide commission plan.  The response and the argument focused on the legal characterization and inferences arising from the facts about the plan's structure and operation.

"bona fide" if "the formula for computing the commissions is such that the employee, in fact, always or almost always earns the same fixed amount of compensation for each workweek (as would be the case where the computed commissions seldom or never equal or exceed the amount of the draw or guarantee)."[4]  29 C.F.R. § 779.416.  Courts look to this regulation for guidance.  *See Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007); *Parker v. NutriSystem*, Inc., 620 F.3d 274, 280 (3d Cir. 2010); *McAninch v. Monro Muffler Brake Inc.*, 799 F. Supp. 2d 807, 817 (S.D. Ohio 2011).

The plaintiffs argue that Saks's compensation plan is not a bona fide commission plan because Crawford's pay exceeded her draw approximately 21% of the time, Melendez's did so 25% of the time, and Williams's pay did so 35% of the time.  Saks does not dispute these numbers for the purposes of the motion.  The issue is whether these percentages are "seldom" as the plaintiffs contend, or often enough for the exemption to apply, as Saks contends.

The cases show that as a matter of law, the rate of exceeding the draw is not "seldom or never."  *See McAninch*, 799 F. Supp. 2d at 818 (pay exceeding draw 19% of the time was not "seldom or never"); *Lee v. Ethan Allen Retail, Inc.*, 651 F. Supp. 2d 1361, 1367, (N.D. Ga. 2009) (pay exceeding draw 28% of the time was not "seldom or never"); *Herman v. Suwannee Swifty Stores, Inc.*, 19 F. Supp. 2d 1365, 1369 (M.D. Ga. 1998) (rejecting rule that pay exceeding draw 10% of the time or less was per se "seldom or never").

The plaintiffs also argue that Saks's compensation plan is essentially a salary plan and not a bona fide commission plan because it has an hourly wage guarantee.  The fact that a plan pays a guaranteed minimum does not prevent it from being a bona fide commission plan.  In determining

---

[4]

The regulations also provide that a commission plan is not bona fide if it is tied to an expected sales quota. 29 C.F.R. § 779.416.  There is no evidence that Saks's commission rate is tied to a sales quota.

whether the 50% commission requirement is met, "all earnings resulting from the application of a bona fide commission rate shall be deemed commissions . . . without regard to whether the computed commissions exceed the draw or guarantee." 29 U.S.C. § 207(i). A commission plan that pays a guarantee can meet the exemption. The statute anticipates the use of guaranteed minimum pay as part of a bona fide commission plan. *See Parker*, 620 F.3d at 276 (plan calling for employee to receive greater of either hourly rate or commission based on flat-rate payments per sale); *Erichs v. Venator Grp., Inc.*, 128 F. Supp. 2d 1255, 1259 (N.D. Cal. 2001) (existence of guarantee does not "mean that all compensation up to and including the amount of the guarantee is a salary" and not a commission); *McAninch*, 799 F. Supp. 2d at 817 (§ 207(i) and § 779.416 do not require recoupment of unearned draw for a plan to be bona fide).

The test for determining whether a plan is a bona fide commission plan or a salary plan is more nuanced than simply identifying a guaranteed draw. "By requiring that a commission rate is bona fide, 'Congress apparently envisions a smell test, one that reaches beyond the formal structure of the commission rate and into its actual effects and the purpose behind it.'" *Ethan Allen*, 651 F. Supp. 2d at 1366 (quoting *Erichs*, 128 F. Supp. 2d at 1260). The Fifth Circuit has not yet spoken on what constitutes a bona fide commission plan. The court in *Casanova v. Gold's Texas Holdings Grp., Inc.*, No. 5:13-CV-1 161-DAE, 2016 WL 1241548, at *8 (W.D. Tex. Mar. 23, 2016) distilled the factors that the Third and Seventh Circuits have used:

1)      whether the commission is a "percentage or proportion of the ultimate price passed on to the consumer," *Casanova*, 2016 WL 1241548, at *8 (citing *Parker*, 620 F.3d at 283; *Yi*, 480 F.3d at 508);

2)      whether the commission is "decoupled from actual time worked, so that there is an incentive for the employee to work more efficiently and effectively," *id.* (citing

*Parker*, 620 F.3d at 284; *Yi*, 480 F.3d at 509; *Charlot v. Ecolab, Inc.*, 136 F. Supp. 3d 433, 451 (E.D.N.Y. 2015);

3)      "the type of work is such that its 'peculiar nature' does not lend itself to a standard eight-hour work day, *id.* (quoting *Alvarado v. Corp. Cleaning Servs., Inc.*, 782 F.3d 365, 368 (7th Cir. 2015)); and

4)      whether the commission system "offend[s] the purposes of the FLSA," *id.* (citing *Alvarado*, 782 F.3d at 368).

"No factor appears dispositive in the case law, but the first two seem to carry the most weight." *Casanova*, 2016 WL 1241548, at *8.

Applying these factors clearly favors Saks. The plaintiffs received a fixed percentage of each sale, with some variation depending on the sales department. *See Cantu-Thacker v. Rover Oaks, Inc.*, No. CIV A H-08-2109, 2009 WL 1883967, at *4 (S.D. Tex. June 30, 2009) (commission plan is a bona fide plan, in which the employees received a fixed percentage of revenue from each sale). Saks's commission plan did not have a cap, and the commission rate did not decrease as total commissions increased. The result was incentives to sell more goods, or more costly goods, or both. *See Charlot*, 2015 WL 5774984, at *17-18 (commission plan motivating workers to increase their sales is bona fide).

Customer sales at Saks varied considerably. Certain times of the day and certain times of the year were busier than others. (Docket Entry No. 33, Ex. A at 101:6-11, 170:6-171:3; Docket Entry No. 33, Ex. E at ¶ 4). Saks scheduled employees based on likely customer demand. (Docket Entry No. 41, Ex. at 104:3-19). This is an indication of a bona fide commission plan. *See Alvarado*, 782 F.3d at 368 (window washers who worked irregular hours because of customer demands were paid under a bona fide commission plan); *Parker*, 620 F.3d at 284 (schedules driven

by consumer demand that fluctuated through the day supported finding a bona fide commission plan).

The fourth factor moderately favors the plaintiffs. Because sales associates are relatively low-skill workers, an employer could hire new sales associates rather than paying overtime. *See Yi*, 480 F.3d at 510. The workplace hazards from working more than 40 hours a week are that sales associates are on their feet assisting customers. *See Parker*, 620 F.3d at 284 (contrasting the dangers posed by manual labor with call-center work). The plaintiffs' annual wages, however, do not put them in what are generally considered the low-wage categories most in need of FLSA protection.[5] *See Alvarado*, 782 F.3d at 371. This slightly favors Saks.

The fact that most of the factors strongly favor Saks and only one slightly favors plaintiffs weighs in favor of finding that Saks's compensation plan is a bona fide commission plan, not a salary plan.

The plaintiffs cite to *Keyes v. Car-X Auto Servs.*, No. 1:07-CV-503-HJWTSH, 2009 WL 4110144, at *3 (S.D. Ohio Sept. 30, 2009). *Keyes* is distinguishable. The *Keyes* plan paid employees the greater of a commission rate on gross sales attributable to the employee, or a guaranteed wage calculated by multiplying the number of hours worked by a fixed hourly rate. The employer "did not calculate a setoff or overpayment in weeks in which [the employee] earned extra for commissions." *Id.* Unlike the employees in *Keyes*, Saks's employees were not paid the greater of a commission or an hourly rate on each sale. Their commissions were also periodically settled against the draw they were paid. An employee who fell below the draw amount for that period was

---

[5]
        The court in *Alvarado* found that window washers, who made between $40,000 and $60,000 a year, fell outside of the lowest wage categories. *Alvarado*, 782 F.3d at 371. Williams's total compensation for 2012 was $48,688.49. (Docket Entry 41, Ex. 6). Melendez's total compensation for 2013 was $39,467.16. (Docket Entry No. 41, Ex. 8). Crawford's total compensation for 2011 was $28,379.79, but this lower amount is due not to low wages in general, but to the fact that she generally worked less than 40 hours a week. (Docket Entry No. 41, Ex. 6).

11

placed in arrears until the total commissions caught up with draws against those commissions that has already been paid.

The plaintiffs also cite to *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 889-90 (S.D. Ohio 2003).  In *Viciedo*, the employees sold computer training courses to consumers.  *Id.*  The employer paid the employees a set, non-recoverable draw on a bi-weekly basis.  If employees sold enough courses to meet a quota, their commissions on all sales were added to the draw.  If employees sold less than the quota, their draw was reduced by the commissions earned so the employee received only the draw.  *Id.* at 896-97.  The court held that this was not a bona fide commission plan because there was no settlement process to compare the amounts dispersed through draws to actual sales.  Instead, the commission was added to the draw, making the draw, in reality, a regular salary.  *Id.* at 897-99.  Unlike *Viciedo*, Saks's plan includes a settlement process under which commissions already paid through the draw are compared to total commissions and associates are either put into arrears because their total commissions are less than what they have received in draws, or the associates are given extra compensation because total commissions are less than the compensation already received through draws.  Total commissions are not simply added to the draw, as in *Viciedo*.  The court's opinion in  *Donovan v. Highway Oil, Inc.*, No. 81-4245, 1986 WL 11266, at *1 (D. Kan. July 18, 1986), can be distinguished on the same grounds.

The plaintiffs cite to *Erichs*, but it provides no better support. The employer in *Erichs* originally had a salary-plus-commission plan that capped a store manager's salary at a particular amount.  When the plan's legality under state law was questioned, the employer changed the plan:

> [T]he [new] Plan guaranteed that store managers would earn a minimum hourly rate equal to 1.5 times the minimum wage for each hour worked and stated that managers would average between $11 and $14 per hour. Manager earnings would be derived

12

> from a commission on the store's sales. As the store's sales increased, the commission percentage dropped. . . . At all times during which the plaintiffs were paid under the Plan, their earnings exceeded one and one-half times the applicable minimum wage.

*Erichs*, 128 F. Supp. 2d at 1257.  There was evidence that the second plan was designed to make manager's salaries effectively the same as under the first plan.  *Id.* at 1257-58.

The court found a factual dispute material to deciding whether the compensation plan was a bona fide commission plan.  The court reasoned that to be bona fide, a commission rate had to be in "good faith."  *Id.* at 1259.  The evidence that the new plan attempted to replicate the previous, illegal plan, presented a factual dispute material to deciding whether the second plan was made in good faith.  *Id.* at 1260-61.  Unlike *Erichs*, there is no evidence in the present record that Saks's plan was designed to replicate a previous illegal plan or that Saks otherwise acted in bad faith.  Saks's plan is a bona fide commission plan under § 207(i).

The plaintiffs also argue that Saks's compensation plan is not a bona fide commission plan under 29 C.F.R. § 779.413.  This regulation lists five typical methods for compensating retail employees:

> (1) Straight salary or hourly rate: Under this method of compensation the employee receives a stipulated sum paid weekly, biweekly, semimonthly, or monthly or a fixed amount for each hour of work.

> (2) Salary plus commission: Under this method of compensation the employee receives a commission on all sales in addition to a base salary (see paragraph (a)(1) of this section).

> (3) Quota bonus: This method of compensation is similar to paragraph (a)(2) of this section except that the commission payment is paid on sales over and above a predetermined sales quota.

> (4) Straight commission without advances: Under this method of compensation the employee is paid a flat percentage on each dollar of sales he makes.

> (5) Straight commission with "advances," "guarantees," or "draws." This method of compensation is similar to paragraph (a)(4) of this section except that the employee

13

is paid a fixed weekly, biweekly, semimonthly, or monthly "advance," "guarantee," or "draw." At periodic intervals a settlement is made at which time the payments already made are supplemented by any additional amount by which his commission earnings exceed the amounts previously paid.

29 C.F.R. § 779.413(a)(1)-(5).

The plaintiffs assert that the first method, under § 779.413(a)(1), is not a bona fide commission plan, but the methods in § 779.413(a)(2)-(5) are bona fide. *Keyes v. Car-X Auto Servs.*, No. 1:07-CV-503-HJWTSH, 2009 WL 4110144, at *3 (S.D. Ohio Sept. 30, 2009) adopted this interpretation of § 779.413(a)(1)-(5). The plaintiffs argue that Saks's commission plan is a hybrid of (a)(1) and (a)(5) because the plan contains a guaranteed hourly draw. Citing *Viciedo v. New Horizons Computer Learning Ctr. of Columbus, Ltd.*, 246 F. Supp. 2d 886, 890 (S.D. Ohio 2003), and other cases, the plaintiffs argue that "a compensation system is not a bona fide commission plan when it creates a hybrid system that meshes together two of the above methods of compensation." (Docket Entry No. 41 at 11).

Although a compensation plan that combines elements of a salary plan under § 779.413(a)(1) with elements of a commission plan under § 779.413(a)(2)-(5) may not be a bona fide commission plan, there is no per se rule that combining elements makes a commission plan not bona fide. Indeed, it is not clear that § 779.413 is meant to provide guidance on which plans are bona fide and which are not. Section 779.413 does not mention the § 207(i) bona fide requirement. Section 779.413 merely states that the examples in subsections (a)(1)-(5) are "typical methods of compensation" for retail employees. § 779.413(b). Many cases that examine whether a commission plan is bona fide do not look to § 779.413 for guidance. *See Yi*, 480 F.3d at 508; *Parker*, 620 F.3d at 282-85; *Casanova v. Gold's Texas Holdings Grp., Inc.*, No. 5:13-CV-1 161-DAE, 2016 WL 1241548, at *3-10 (W.D. Tex. Mar. 23, 2016); *Thomas v. Bob Mills Furniture Co.*, LLC, No.

W-14-CV-219, 2016 WL 1464636, at *2 (W.D. Tex. Apr. 13, 2016).  Section 779.416, by contrast, does attempt to define what a bona fide commission plan is and uses examples.  29 C.F.R. § 779.416.  None of the § 779.413(a) examples are mentioned in § 779.416.  *Id.*  Section 779.413 explains that the examples set out in subsections (a)(1)-(5)  "reflect[] the typical methods of compensation [and are] not, of course, exhaustive of the pay practices which may exist in retail or service establishments."  29 C.F.R. § 779.413(b).  By acknowledging that compensation plans can and do vary, the regulation anticipates that elements from its examples might be combined.

Assuming that § 779.413 is relevant to determining whether a commission plan is bona fide, the cases the plaintiffs cite do not support their argument that a combined or hybrid compensation method can never be a bona fide commission plan, or that the Saks plan is not bona fide.  The cited cases rest their holdings on finding that the plans at issue were in effect salary plans, not that they were a hybrid combining elements from the plan types listed in § 779.416(a)(1)-(5).  *See Viciedo*, 246 F. Supp. 2d at 898 ("Regardless of whether the Level I plan constitutes a salary plus commission, a quota bonus plan, or a hybrid of both, the pre-determined compensation referred to by the Defendant as a 'non-recoverable draw' does not represent commissions."); *Donovan v. Highway Oil, Inc.*, No. 81-4245, 1986 WL 11266, at *4 (D. Kan. July 18, 1986) (plan was a salary plan because it did not compare total commissions to what had already been paid through the "draw"); *Keyes v. Car-X Auto Servs.*, No. 1:07-CV-503-HJWTSH, 2009 WL 4110144, at *3 (S.D. Ohio Sept. 30, 2009) ("default guaranteed wage represents a salary" because of the "plan's operation").

The plaintiffs cite one case, *Bowman v. Builder's Cabinet Supply Co.,* No. CIV.A. 04-201-DLB, 2006 WL 2460817, at *9 (E.D. Ky. Aug. 23, 2006), that arguably held that a plan was not bona fide because it was a hybrid.  The court noted that the plan fell "somewhere in the middle"

of a salary and a § 779.413(a)(2)-(5) commission plan.  The *Bowman* court cited *Viciedo* in support, but the court in *Vicedo* did not base its holding on the fact that the plan was a hybrid.  *See Viciedo*, 246 F. Supp. 2d at 898 ("Regardless of whether the Level I plan constitutes a salary plus commission, a quota bonus plan, or a hybrid of both, the pre-determined compensation referred to by the Defendant as a 'non-recoverable draw' does not represent commissions.").

And *Bowman*, like the other cases plaintiffs cite, is distinguishable for the added reason that Saks's commission plan is not a hybrid plan.  Section 779.413(a)(5) describes a bona fide "[s]traight commission" system under which an employee receives a fixed weekly draw.  After a certain period, commissions are "settled" and the employee receives additional commissions for amounts exceeding what was previously paid.  § 779.413(a)(5).  None of the plans in the cases plaintiffs cite fit this description because they did not have a settling process comparing actual commissions to draws against commission and adjusting the compensation as needed to pay commissions above the fixed draw.  Saks's plan has a settling process and the other elements of a "[s]traight commission" system.  It is not a hybrid.  Saks's plan is not invalid under § 779.413.

The plaintiffs argue that even if the retail-sales exemption applies, Saks should be estopped from asserting it because Saks paid sales associates overtime, if not the full amount the plaintiffs believe they are owed.  No circuit has recognized promissory estoppel as a defense against an FLSA exemption.  Even if estoppel is a viable legal basis to overcome an exemption, the plaintiffs would need to show:  "(1) a material misrepresentation; (2) reasonable and detrimental reliance upon the representation; and (3) extraordinary circumstances."  *Mello v. Sara Lee Corp*., 431 F.3d 440, 444-45 (5th Cir. 2005) (recognizing ERISA estoppel).  The plaintiffs have not explained how they relied on Saks paying overtime to their detriment, and do not point to a basis in the record to support

16

finding detrimental reliance. The plaintiffs' theory for why they are due overtime is that they worked hours off-the-clock that exceeded 40 hours in a workweek. The fact that Saks previously paid some overtime would not have prevented them from asserting claims based on those unpaid hours, assuming no exemption.

Saks is not estopped from asserting the exemption.

### III.   Motion for Conditional Certification and Dismissal

Because the court grants summary judgment against the plaintiffs, the motion for conditional certification must also be denied and the case dismissed. Unlike a class action certified under Rule 23, which allows a court to retain jurisdiction even after resolving the claims of a named plaintiff if a new class representative is joined, resolving the named plaintiffs' claims in an FLSA collective action deprives the court of jurisdiction, even after conditional certification. *See Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1524 (2013).

In *Genesis Healthcare*, the plaintiff asserted FLSA claims on behalf of herself and other similarly situated individuals. *Id.* at 1527. Before the plaintiff moved for conditional certification, the defendant employer made an offer of judgment under Rule 68 of the Federal Rules of Civil Procedure. The offer gave the representative plaintiff—the only named plaintiff—complete relief, including her attorney's fees and costs. When the plaintiff did not respond, the employer moved to dismiss for lack of subject matter jurisdiction, arguing that plaintiff no longer had a personal stake in the outcome. The district court agreed and dismissed the action for lack of jurisdiction. The Third Circuit reversed, and the Supreme Court granted *certiorari* to resolve whether and when an FLSA collective action is no longer justiciable because the representative plaintiff's individual claim has become moot. *Id.*

The Court rejected the plaintiff's argument that subject matter jurisdiction remained even after her claims were dismissed because she retained a personal interest in the collective action and could move to have it certified. *Id.* at 1527-29. The plaintiff pointed to the Supreme Court's decisions in *Sosna v. Iowa*, 419 U.S. 393 (1975), and *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980), which involved class actions certified under Rule 23. *Id.* at 1530. The Supreme Court applied "straightforward" mootness principles and held that conditional certification under the FLSA, unlike class action certification under Rule 23, "does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court, § 216(b)." *Id.* at 1530. As a result, when the district court dismissed the claims of the representative plaintiff of the collective action, the plaintiff no longer had a personal stake in the action, making it moot and requiring its dismissal. *Id.* at 1529.

Since *Genesis* was decided, district courts have denied conditional certification when, as here, the representative plaintiffs claims were dismissed. In *Dixon v. NBC Universal Media, LLC*, 947 F. Supp. 2d 390, 392-93 (S.D.N.Y. 2013), the representative plaintiff brought FLSA unpaid-overtime claims against her employer on behalf of herself and other similarly situated employees. The company routinely required employees to sign arbitration agreements that prohibited collective actions. *Id.* at 393. The employer moved to compel arbitration and the representative plaintiff moved for conditional certification and issuance of notice. *Id.* at 395. The court found that the representative plaintiff had signed a valid and enforceable arbitration agreement covering her claims. *Id.* at 400-04. The court denied the motion for conditional certification because "the only plaintiff

to opt-in to this lawsuit to date . . . has agreed to arbitrate her FLSA claims, and has waived the right to bring a collective action with regard to those claims. She therefore lacks any personal interest in prosecuting this action in this Court on behalf of others who have yet to opt in." *Id.* at 405-06 (citing *Genesis*, 133 S.Ct. at 1529, 1529 n.4.).

In *Beery v. Quest Diagnostics, Inc.*, No. 12-CV-00231 KM MCA, 2013 WL 3441792, at *3 (D.N.J. July 8, 2013), the court dismissed the representative plaintiffs' Equal Pay Act claims against their employer in favor of arbitration, before conditional certification.  The court denied the plaintiffs' pending motion for conditional certification, despite the fact that four additional employees had filed consent-to-join opt-in documents.  The court reasoned that "[r]etaining jurisdiction over the named Plaintiffs' now-defunct . . . claim, swapping in as plaintiffs the four individuals who filed consent-to-join forms, would be inconsistent with . . . [*Genesis Healthcare*]," because these individuals would not become party-plaintiffs until after conditional certification and court-ordered notice.  Those who filed consent-to-join forms were not parties, much less representative parties, until those steps occurred.  Until then, those who filed consent-to-join forms were in effect, attempting to "join in with claims and parties that never belonged in federal court in the first place." *Id.* at *3 n.2.

As in *Genesis Healthcare*, *Dixon*, and *Beery*, no individual named or representative plaintiffs' claims remain against Saks because the court has granted Saks's summary judgment motion on those claims.  The court lacks subject-matter jurisdiction over the FLSA action against Saks.

## VI.    Conclusion

Saks's motion for summary judgment, (Docket Entry No. 31), is granted and the plaintiffs'

19

motion for conditional certification, (Docket Entry No. 29), is denied.  This case is dismissed.  An order of dismissal is entered separately.

SIGNED on June 2, 2016, at Houston, Texas.

Lee H. Rosenthal
United States District Judge